698

UNITED STATES, Appellee,

v.

Private First Class Titus D. FISHER, Jr., 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, United States Army, Appellant.

ACMR 8901397.

U.S. Army Court of Military Review.

30 March 1990.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Gregory A. Gross, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Gary L. Hausken, JAGC, Captain Jonathan F. Potter, JAGC (on brief).

Before DeFORD, KANE and WERNER, Appellate Military Judges.

OPINION OF THE COURT

DeFORD, Senior Judge:

The appellant was tried in absentia by a general court-martial with members, and convicted contrary to his pleas of failure to repair to a formation, disrespect to a commissioned officer, willful damage of private property, participation in a riot, and communicating of a threat to a commissioned officer in violation of Articles 86, 89, 109, 116, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 889, 909, 916, and 934 (1982) [hereinafter UCMJ], respectively. His approved sentence included a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

The appellant contends that the court-martial erred as a matter of law in convicting him of the offense of riot as the appellant's acts did not terrorize the public. We agree for the reasons set forth below.

I

The record discloses that some two days prior to the incident in question here, an altercation occurred between soldiers belonging to the 1st Battalion, 8th Field Artillery, and the 65th Engineer Battalion—two units of the 25th Infantry Division located at Schofield Barracks, Hawaii. As a consequence of this altercation, a soldier from the Artillery unit received a dislocated elbow.

On the evening of 24 September 1988, several carloads of soldiers, some 10 to 18 in number, from the Artillery drove from

their unit to the parking lot of the barracks occupied by the 65th Engineer Battalion and the 71st Chemical Company at Schofield Barracks. They armed themselves with poles, bats, broom sticks, and crow bars. The appellant, the apparent leader of this group, then entered the barracks, saw a Privates Williamson and Hawkens, and requested to speak with Williamson outside the barracks. Williamson did not respond to the request and a Lieutenant (LT) Powis, the unit Staff Duty Officer, asked Fisher who he was and what he wanted. The appellant identified himself as a civilian and stated he wished to speak to Private Williamson outside the barracks. Williamson again did not respond to this request. When Williamson and Hawkens moved behind him, LT Powis asked Williamson why he would not talk with the appellant. The appellant then started yelling at Williamson, saying "Go get your boys—we are ready in the parking lot," or words to that effect. LT Powis, who was aware of the previous incident two days before, ordered the two privates from the Engineers to return to their rooms and remain there. He observed 10 to 15 people in the parking lot armed with "bats, pipes, and sticks." He then ordered the appellant to leave the building and directed his staff duty driver to call the military police. LT Powis then moved toward the appellant at which point the appellant was disrespectful in language to LT Powis. The appellant then walked out of the building and addressed the group of soldiers waiting in the parking lot, stating words to the effect, "if they are not going to come out we'll get their cars." The group, to include the appellant, then began hitting the cars and a moped parked in the parking lot with their bats, sticks, poles, and crow bar. The vehicles were collectively damaged to the sum of $8,456.00. Prior to the arrival of the military police, the group dropped their weapons, re-entered their vehicles, and left the area. There were several contacts between this group of soldiers and several officers and enlisted men of the 71st Chemical Company during the incident, but the record does not disclose that other elements of the military community in close proximity to that event were adversely affected in any manner.

II

Article 116, UCMJ, provides that "any person subject to this chapter who causes or participates in any riot or breach of the peace shall be punished as a court-martial may direct."

The Manual describes the elements of the offense of riot as including: (a) that the accused was a member of an assembly of three or more persons; (b) that the accused and at least two other members of this group mutually intended to assist one another against anyone who might oppose them in doing an act for some private purpose; (c) that the group or some of its members, in furtherance of such purpose, unlawfully committed a tumultuous disturbance of the peace in a violent or turbulent manner; and (d) that these acts terrorized the public in general in that they caused or were intended to cause public alarm or terror. Manual for Courts–Martial, United States, 1984, Part IV, paragraph 41b(1) [hereinafter MCM, 1984].

The Manual further describes the gravamen of the offense of riot as "terrorization of the public." The terms "community" and "public" include a military organization, post, camp, ship, aircraft, or station. MCM 1984, para. 41c(3). The offense of breach of the peace is a lesser included offense of riot.

The foregoing elements of the offense and the substantive definition of the offense of riot as set forth above are based upon the determination by the Congress to adopt the common law offense of riot for application in the military law. *See United States v. Metcalf*, 36 C.M.R. 309 (C.M.A. 1966); Manual for Courts–Martial, United States, 1984, Part IV, Paragraph 41, analysis at A21–95.

The thrust of the appellant's allegation of error is the sufficiency of the prosecution's evidence to sustain conviction for the offense of participating in a riot. In testing for the legal sufficiency of the evidence of record, we must determine

whether a rational factfinder could find the essential elements of the offense when the evidence of record is considered in the light most favorable to the prosecution. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In testing for the factual sufficiency of the evidence, this court must weigh the evidence of record, making allowance for not having seen and heard the witnesses and determine for ourselves whether an accused is guilty beyond reasonable doubt of the offenses with which he is charged. *Id.* at 325, 99 S.Ct. at 2792.

Turning to the facts of record before us, the record does not substantiate the element that "these acts terrorized the public in general in that they caused or were intended to cause public alarm and terror." Here, the incident certainly amounted to a tumultuous breach of the peace. However, it only involved some 10 to 18 soldiers from the 8th Artillery, three or four soldiers of the 65th Engineer Battalion, and no more than five to six soldiers of the 71st Chemical Company. Although destructive in nature, it was of brief duration. Consequently, there is no showing of record that the public or community as defined by the Manual was likely affected or terrorized by the tumultuous affair. Accordingly, we hold that the evidence is insufficient to sustain a finding of guilty of the offense of riot under military law.

However, the evidence of record will sustain a finding of guilty of the lesser included offense of a breach of the peace in violation of the same article. The court-martial considered each element of the offense of breach of the peace as a matter of law when it returned a finding of guilty of the offense of riot. Accordingly, in these circumstances we are authorized to affirm the lesser included offense.

The remaining allegation of alleged error has been duly considered and is deemed to be without merit.

Accordingly, only so much of the finding of guilty of the Specification of Charge IV is affirmed as finds that the appellant did at the date, time and place alleged in the Specification participate in a breach of the peace by unlawfully assembling with eight or more soldiers of the Division Artillery for the purpose of attempting to cause an assault upon other soldiers and by participating in the willful damaging of privately owned vehicles. The remaining findings of guilty are affirmed.

Reassessing the sentence based upon foregoing errors and the entire record, the court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to Private E1. *See United States v. Sales*, 22 M.J. 305 (C.M.A.1986).

Judge KANE and Judge WERNER concur.