**UNITED STATES, Appellee,**

v.

**Inmate Jerry THOMAS, 420–60–3831, A person in the custody of the Armed Forces serving a sentence imposed by court-martial, Appellant.**

**ACMR 8900751.**

U.S. Army Court of Military Review.

28 Feb. 1992.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Lieutenant Colonel James H. Weise, JAGC, Captain Alan M. Boyd, JAGC, Captain Robin N. Swope, JAGC (on brief).

For Appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC, Captain Kenneth H. Goetzke, Jr., JAGC, Captain Timothy W. Lucas, JAGC (on brief).

Before CREAN, WERNER and HAGAN, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

CREAN, Senior Judge:

The appellant has a long involvement with the military justice system having had four court-martial proceedings initiated against him. He is currently an inmate in the United States Disciplinary Barracks, Fort Leavenworth, Kansas [hereinafter USDB], serving a sentence to confinement of 14 years.

In the appellant's first court-martial in April 1985 at Fort Polk, Louisiana, he was convicted of rape and housebreaking with intent to commit adultery, and sentenced to a dishonorable discharge, confinement for 15 years, forfeiture of all pay and allowances, and reduction to Private E1. This Court reduced the confinement portion of his sentence to 14 years. *United States v. Thomas*, CM 447482 (A.C.M.R. 30 Oct. 1986) (unpub.), *aff'd*, 27 M.J. 399 (C.M.A. 1988) (summary disposition). The appellant was issued a dishonorable discharge as a result of this court-martial on 27 January 1989.

His second court-martial was a special court-martial at Fort Leavenworth, Kansas, in September 1987, for an assault on a military policeman (guard at the USDB). The convening authority approved the adjudged sentence of confinement for six months.

In the present case before this Court, the appellant's third court-martial, a general court-martial composed of officer members found him guilty, contrary to his pleas, of assaulting a military policeman (guard at the USDB) in the execution of his office and communicating a threat, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of confinement for two years.

Prior to the third court-martial, the trial defense counsel requested a psychiatric evaluation of the appellant. However, the appellant refused to speak to the psychiatric examiners conducting the mental status evaluation ordered by the convening authority. The military judge ordered a further psychiatric examination and again the appellant refused to cooperate. He also refused to cooperate with his trial defense counsel or to even attend his trial. As a result of the appellant's lack of cooperation, the trial defense counsel moved to hold the trial in abeyance on the grounds that the appellant lacked the capacity to stand trial. After hearing evidence from the USDB cadre, a psychiatrist, and a psychologist at the USDB, the military judge ruled:

> Now taking the motion to be a motion to abate for further psychiatric testimony or in the alternate a motion to suspend the proceedings due to the defendant's lack of capacity to stand trial, I find that by a preponderance of the evidence that the accused, since at least 9 December 1988, and actually starting in October and November of '88, has not cooperated with his defense counsel in the defense of the charges now pending against him, nor has he cooperated in attempts by the court, and I might add, his defense counsel, to have him psychiatrically evaluated. He has exhibited on occasion what might be termed psychiatrically meaningful manifestations. He will twitch his head from side to side; on occasion he will make reference to the computer which is controlling his treatment down in the maximum security area. He, on occasion, exhibits complete ability to cooperate and think and act rationally. This he did on 9 December 1988 at the Article 39(a) Session, and in the Fall of

1988 at his two D and A Board appearances. When left alone, he is quiet, cooperative and displays, for the most part, totally appropriate behavior. When last diagnosed he was cooperative and that report was dated August of '87, I believe, and he was found to have no mental disease or defect and total competence.

The expert mental testimony and efforts, which I might add, I am not totally pleased with, is of the same opinion today. The fact that they have thrown up their hands, to quote, over inmate Thomas, I find reinforces their opinion that he is sane and competent. I am clearly convinced the accused is not suffering from a mental disease or defect, that he fully understands the nature of the proceedings against him and that he is able to cooperate intelligently in his defense. I am also clearly convinced that the accused chooses not to cooperate in his defense and chooses not to be present at this trial. This is of his own free will and is voluntary. He is acting like a petulant little boy, who has decided he is not going to play with us or participate in our game. While he so acts further evaluation or delay would accomplish nothing. Therefore, the motion to abate or suspend the proceedings is denied.

The appellant's refusal to cooperate with his military defense counsel or to participate in the proceedings led to his trial *in absentia.*

Within a matter of days after the appellant was found guilty and sentenced in this case, and continuing for the next two months, the appellant would assault the guards at the USDB. In July 1989, a fourth court-martial was initiated. A psychiatric evaluation ordered by the military judge was conducted in October/November 1989. The appellant, as he did in his third court-martial, initially agreed to cooperate with the mental evaluation board, but later changed his mind and refused to talk to the board members. The board determined that the appellant was a paranoid schizophrenic unable to appreciate the nature and quality or wrongfulness of his conduct, and that he did not have sufficient mental ca-

pacity to understand the nature of the pending court-martial proceeding or to conduct or cooperate intelligently in his defense. The mental evaluation board also recommended that the appellant be transferred to a facility where he could receive appropriate psychiatric care.

The convening authority, Commander, US Army Combined Arms Center and Fort Leavenworth, dismissed the charge and specifications that would have been tried by the fourth court-martial and ordered a hearing to determine if the appellant should be sent to a federal treatment facility for his mental condition. The same military judge that presided at the third court-martial and had ordered the mental status evaluation for the fourth court-martial was the hearing officer for the transfer proceedings. Based on the evidence presented, the military judge, in his capacity as the hearing officer, determined that the appellant was suffering from paranoid schizophrenia and should be transferred to a psychiatric facility that could provide him with the appropriate care. The convening authority approved the recommendation and the appellant was transferred to the Federal Bureau of Prisons' Medical Center for Federal Prisoners at Springfield, Missouri. The appellant received extensive medical and mental health treatment at the medical center, was provided medication to control his paranoid schizophrenia, and eventually returned to the USDB.

This Court, because of the evidence concerning the appellant's mental condition that became available after the trial of the third court-martial, ordered a limited hearing to make specific findings of fact concerning the appellant's mental responsibility for the offenses tried by the third court-martial; his mental capacity to participate at the third court-martial; and his mental capacity to participate in these appellate proceedings. *See United States v. DuBay,* 37 C.M.R. 411 (C.M.A.1967). On 24 April 1991, the presiding military judge for the *DuBay* hearing ordered a further mental evaluation of appellant. The board met on 9 May 1991, and the appellant fully cooperated with this mental evaluation board.

The board also had extensive medical records of the appellant to consider in making their determination. Based on their evaluation of the evidence, the board determined that, at the time of the alleged criminal conduct, 8 August 1988, the appellant did have a severe mental disease or defect with a clinical psychiatric diagnosis of schizophrenia, paranoid type; at the time of the alleged criminal conduct and as a result of such mental disease or defect, the appellant was unable to appreciate the wrongfulness of his conduct; and at the time of the court-martial proceedings, 9 December 1988 to 1 March 1989, the mental disease rendered him incompetent to cooperate intelligently in his defense. However, the board further found that the appellant did, at the present time, have the capacity to understand and cooperate in the appellate proceedings.

During the *DuBay* hearing, in addition to considering the report of the mental evaluation board, the military judge heard testimony from two of the mental evaluation board members and considered numerous documents concerning the appellant's mental status. On 10 September 1991, the military judge made the following findings of fact: that at the time of the offenses, 8 August 1988, the appellant was not mentally responsible for the charged misconduct; that during the period of the court-martial, September 1988 to March 1989, the appellant did not have the mental capacity to stand trial; and that the appellant had the present mental capacity to understand and cooperate in the appellate proceedings.

■ Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 909 [hereinafter R.C.M.], provides that an individual cannot be brought to trial if that person is suffering from a mental disease or defect which renders him unable to understand the nature of the proceedings against him or to conduct or cooperate intelligently in his defense. An individual is presumed to have the mental capacity to stand trial unless the contrary is established. The burden is on the accused to establish this lack of mental capacity by a preponderance of the evidence. R.C.M. 909(c)(2).

■ Under Article 50a, Uniform Code of Military Justice, 10 U.S.C. § 850a, it is an affirmative defense in a trial by court-martial if, at the time of the commission of the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and the quality or the wrongfulness of the acts. An accused has the burden of proving lack of mental responsibility by clear and convincing evidence. UCMJ, Art. 50a(b).

■ Based on the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) for legal and factual sufficiency, respectively, and *United States v. Turner*, 25 M.J. 324, 324–25 (C.M.A.1987), we find that, at the third court-martial, the appellant did not carry either of these burdens. The USDB cadre and the medical experts testified at the third court-martial that the appellant had both mental capacity and mental responsibility. The medical experts' opinions were limited because the appellant failed to cooperate with them in their evaluation. Based on the evidence available, the military judge correctly ruled that the appellant had the mental capacity to stand trial. Additionally, the appellant never raised the issue of mental responsibility during the third court-martial so the issue was not fully litigated at trial. His trial defense counsel was unable to present evidence of appellant's mental condition because of appellant's unwillingness to cooperate with the mental evaluation board.

However, the evidence presented at the transfer proceedings and the *DuBay* hearing ordered by this Court provides a clearer picture of the appellant's mental condition. The appellant cooperated fully in the mental status evaluation board ordered for the limited hearing because of the medical and mental treatment he received at the Medical Center for Federal Prisoners. The mental evaluation board determined that he did not cooperate with the earlier mental status examinations because of his mental condition of paranoid schizophrenia. Based on the appellant's ability and willingness to cooperate with the mental evaluation

board, the evidence received at the *DuBay* hearing, and based on our fact finding authority under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, we find that the appellant has met the burden to establish his lack of mental capacity by a preponderance of the evidence and his lack of mental responsibility by clear and convincing evidence. Accordingly, we hold that the appellant was not mentally responsible for the charged misconduct on 8 August 1988; and that during the trial proceedings from September 1988 to March 1989, the appellant suffered from a mental disease or defect which rendered him mentally incompetent to understand the nature of the proceedings against him or to cooperate intelligently in his defense. We also hold that the appellant is presently mentally competent to participate in these appellate proceedings.

The findings of guilty and the sentence are set aside. The charges are dismissed. All rights, privileges, and property of which the appellant has been deprived by virtue of the execution of the sentence will be restored.

Judge WERNER and Judge HAGAN concur.