# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Cadet JACOB D. WHISENHUNT**
**United States Army, Appellant**

ARMY 20170274

United States Military Academy
S. Charles Neill, Military Judge
Colonel James Robinette, II, Staff Judge Advocate

For Appellant:  William E. Cassara, Esquire (on brief); Captain Zachary Szilagyi, JA; William E. Cassara, Esquire (on supplemental brief and reply brief).

For Appellee:  Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Hannah E. Kaufman, JA; Captain Meredith M. Picard, JA (on brief and supplemental brief).

3 June 2019

---------------------------------
SUMMARY DISPOSITION
---------------------------------

Per Curiam:

Appellant raises numerous assignments of error and issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), related to his convictions and sentence for sexual assault.  We need only address one.  Pursuant to our review of the record, we find that appellant's convictions are factually insufficient.

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of three specifications of sexual assault, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 [UCMJ].  The panel sentenced appellant to be dismissed from the service, confinement for twenty-one years, total forfeitures, and a reprimand.  The convening authority approved the sentence as adjudged.

**BACKGROUND**

The government charged appellant with three specifications of sexually assaulting his fellow West Point cadet, LM, during Cadet Field Training at Camp Buckner; two of the specifications related to digital penetration,* while the third related to penile penetration.  Each of the specifications related to a sexual encounter in LM's sleeping bag (also referred to as a "bivy cover").

Appellant and LM were assigned to the same squad during Cadet Field Training, which started in late-June 2016.  On the night of 7 July 2016, their squad bedded down along with the remainder of their company at a field bivouac site.  The site was open (although there were some trees), and the cadets slept on the ground.  Appellant's and LM's sleeping bags were next to one another, and the other squad members were within a few feet of them.  There was also evidence that LM had a "crackly" space blanket under or around her sleeping bag.

Cadets were not authorized to have sex during Cadet Field Training.  That night, however, appellant penetrated LM's vagina with his finger and then with his penis.  These sexual acts were not observed by any other cadets in their squad or company, but appellant's semen was found inside LM's sleeping bag.

At trial, the parties presented competing theories over this sexual encounter.  The government asserted that appellant was a sexual aggressor who assaulted LM in her sleeping bag, while the defense averred that the parties engaged in a consensual sexual encounter while taking active measures to avoid detection.  The parties provided a variety of evidence and arguments – both direct and circumstantial – in support of these theories, to include what happened before and after the encounter.

LM and appellant both testified at trial.  In describing the alleged assault, LM said she was inside her bivy cover to the point that it completely covered her head, but she woke up to appellant penetrating her with his finger and then with his penis.  LM said she remained frozen in the fetal position during the entire assault.  By contrast, appellant testified that the sexual acts were precipitated by a series of escalating and consensual touchings.  Appellant also said that both parties tried to avoid detection and even stopped and held their breaths after hearing a nearby noise.

Following closing arguments, in which the parties reiterated their contrasting theories, the panel convicted appellant of all three specifications.

---

* On appeal, the government concedes that these specifications involved the same penetration and thus one of them should be set aside.  This issue is mooted by our finding that all of the specifications are factually insufficient.

**LAW AND DISCUSSION**

Article 66, UCMJ, establishes our statutory duty to review a record of trial for legal and factual sufficiency de novo. *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). We may affirm only those findings of guilt that we find correct in law and fact and determine, based on the entire record, should be approved. *Id*.

In weighing factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). To affirm a conviction, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we must be] convinced of [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

We have carefully reviewed the evidence and, taking into consideration that the panel saw and heard the witnesses and we did not, we nevertheless conclude that appellant's convictions are factually insufficient. At a minimum, affirming these convictions would require us to reach a number of conclusions that are inadequately supported by the evidence.

The defense theory was that appellant and LM engaged in a consensual sexual encounter while taking active measures to avoid detection. In our view, the circumstantial evidence in support of this defense theory severely undercuts the government's case. For example, to be convinced of appellant's guilt, we would have to conclude beyond a reasonable doubt that the sexual acts could plausibly occur (and would not be discovered) without active cooperation from both parties. Given different circumstances, this might not be a stretch. But in the unique circumstances here – which include a bivy cover, a noise-producing space blanket, and numerous squad mates in very close proximity – it is hard to conclude beyond a reasonable doubt that appellant could complete the charged offenses without cooperation or detection.

It is even harder to conclude beyond a reasonable doubt that appellant would anticipate that LM would not make any reflexive noise or movements upon being awakened, which would have alerted multiple others to his criminal activity. This is particularly true when there is no evidence that appellant threatened LM or took any steps, such as covering her mouth, to prevent an outcry. Additionally, appellant would have needed to anticipate that LM would not report his crimes at a later date, when the record is devoid of any evidence that LM could not identify him, that she was incapacitated, or that he had threatened or coerced her. Furthermore, appellant left his semen on LM's bivy cover, and there is no evidence that he tried to remove this evidence.

WHISENHUNT—ARMY 20170274

The scenario outlined by the defense and the record leaves us with a fair and rational hypothesis other than guilt. *United States v. Billings*, 58 M.J. 861, 869 (Army Ct. Crim. App. 2003); *see also* Dep't of the Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 8-3-11 (10 Sep. 2014). Ultimately, we are not required to determine categorically whether appellant or LM's testimony is true, or even whether their testimony is more likely true than not. We do not review convictions under a preponderance of the evidence standard. Instead, we may only affirm convictions that we are ourselves convinced have been proven beyond a reasonable doubt. We are not so convinced in this case.

**CONCLUSION**

The findings of guilty and the sentence are SET ASIDE. Specifications 1, 2, and 3 of The Charge and The Charge are DISMISSED. All rights, privileges, and property of which appellant has been deprived by virtue of the findings and sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

4